**IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION**

| | |
|---|---|
| WISCONSIN CENTRAL, LTD., ) | |
| ) | |
| Plaintiff, ) | |
| ) | |
| v. ) | |
| ) | |
| TIENERGY, LLC, ) | Case No. 15 C 2489 |
| Defendant. ) | |
| _____) | |
| ) | |
| TIENERGY, LLC, ) | |
| ) | |
| Third-Party Plaintiff, ) | |
| ) | |
| v. ) | |
| ) | |
| ALLIED TRACK SERVICES, INC., f/k/a ) | |
| SWIFT RAILROAD CONTRACTORS ) | |
| CORPORATION, ) | |
| ) | |
| Third-Party Defendant. ) | |

## MEMORANDUM OPINION AND ORDER

AMY J. ST. EVE, District Court Judge:

On March 24, 2015, Plaintiff Wisconsin Central Ltd. ("Wisconsin Central") filed a one-count Complaint against Defendant TiEnergy, LLC ("TiEnergy") seeking demurrage charges in the amount of $104,595.00 pursuant to the Interstate Commerce Commission Termination Act ("ICCTA"), specifically, 49 U.S.C. § 10743.[1] On October 13, 2015, Defendant/Third-Party TiEnergy filed a First Amended Third-Party Complaint against Third-Party Defendant Allied Track Services ("Allied") seeking indemnification, contribution, and damages for breach of contract in relation to Plaintiff Wisconsin Central's demurrage charges.

---

[1] The parties do not dispute the amount of the demurrage charges at issue in this lawsuit.

Before the Court are Plaintiff Wisconsin Central's Federal Rule of Civil Procedure 56(a) motion for summary judgment against Defendant TiEnergy and Defendant TiEnergy's Rule 56(a) cross-motion for summary judgment against Plaintiff Wisconsin Central in relation to Wisconsin Central's Complaint against TiEnergy. Also before the Court is Third-Party Defendant Allied's Rule 56(a) summary judgment motion against Third-Party Plaintiff TiEnergy concerning the TiEnergy's First Amended Third-Party Complaint.

For the following reasons, the Court grants Wisconsin Central's and Allied's motions for summary judgment [51, 52] and denies TiEnergy's motion for summary judgment [56]. In addition, the Court grants TiEnergy's motion to strike Allied's Rule 56.1(b) response as stated in detail below. [74]. The Court further grants TiEnergy's motion to strike Wisconsin Central's January 5, 2017 "certification," also discussed directly below. [73]. Last, the Court denies Plaintiff Wisconsin Central's motion for oral argument in regard to its summary judgment motion. [82]. Wisconsin Central must file a proposed order of judgment stating the demurrage charges and calculating the appropriate pre-judgment interest with the Court by no later than May 8, 2017.

## BACKGROUND

I. **Northern District of Illinois Local Rule 56.1**

    A. **Standards**

"The purpose of Rule 56.1 is to have the litigants present to the district court a clear, concise list of material facts that are central to the summary judgment determination. It is the litigants' duty to clearly identify material facts in dispute and provide the admissible evidence that tends to prove or disprove the proffered fact." *Curtis v. Costco Wholesale Corp.*, 807 F.3d

215, 219 (7th Cir. 2015). Local Rule 56.1(a) "requires the party moving for summary judgment to file and serve a 'statement of material facts as to which the moving party contends there is no genuine issue and that entitle the moving party to a judgment as a matter of law.'" *Id.* at 218 (citation omitted). "The non-moving party must file a response to the moving party's statement, and, in the case of any disagreement, cite 'specific references to the affidavits, parts of the record, and other supporting materials relied upon.'" *Petty v. Chicago,* 754 F.3d 415, 420 (7th Cir. 2014) (citation omitted); *see also* L.R. 56.1(b)(3)(A). Local Rule 56.1(b)(3)(C) requires the non-moving party to file a separate statement of additional facts. *See Thornton v. M7 Aerospace LP*, 796 F.3d 757, 769 (7th Cir. 2015).

Local Rule 56.1 statements and responses should identify the relevant admissible evidence supporting the material facts – not make factual or legal arguments. *See Zimmerman v. Doran,* 807 F.3d 178, 180 (7th Cir. 2015). "When a responding party's statement fails to dispute the facts set forth in the moving party's statement in the manner dictated by the rule, those facts are deemed admitted for purposes of the motion." *Curtis*, 807 F.3d at 218 (quoting *Cracco v. Vitran Exp., Inc.,* 559 F.3d 625, 632 (7th Cir. 2009)). The Seventh Circuit "has consistently upheld district judges' discretion to require strict compliance with Local Rule 56.1." *Flint v. City of Belvidere,* 791 F.3d 764, 767 (7th Cir. 2015).

**B.     The Parties' Local Rule 56.1 Filings**

Despite these well-settled local procedural rules that articulate how litigants must present material facts at summary judgment in the Northern District of Illinois, the parties have failed to follow the letter or the spirit of the rules to assist the Court in determining the relevant, admissible evidence. To explain, although Defendant TiEnergy's motion for summary judgment

3

is against Plaintiff Wisconsin Central, Third-Party Defendant Allied has filed a response to TiEnergy's Rule 56.1(a) Statement of Facts. Because TiEnergy's summary judgment motion is directed at Wisconsin Central's claims – as set forth in Wisconsin Central's Complaint – the Court, in its discretion, will not consider Third-Party Defendant Allied's Rule 56.1(b)(3)(A) Response to TiEnergy's Rule 56.1(a) statement because Allied is not an "opposing party" as contemplated by Rule 56.1(b). On the other hand, Allied filed a proper Rule 56.1 response to TiEnergy's Rule 56.1(b)(3)(C) Statement of Additional Facts in relation to Allied's summary judgment motion, which has considerable overlap with TiEnergy's Rule 56.1 Statement. The Court will consider Allied's response in this context.

Further, instead of filing a Rule 56.1(b)(3)(A) Response to TiEnergy's Rule 56.1(a) Statement of Facts, Plaintiff Wisconsin Central included a three paragraph "rebuttal" as part of its response brief in opposition to Defendant TiEnergy's summary judgment motion. Because these rebuttal paragraphs are in contradiction of Local Rule 56.1, the Court will not consider them. Similarly, Wisconsin Central attempted to respond to TiEnergy's Rule 56.1(a) Statement of Fact ¶ 19 by attaching a "certification" to its summary judgment response brief. The Court will not consider this "certification" because Wisconsin Central failed to follow Local Rule 56.1(b). Nonetheless, the Court notes that Wisconsin Central did file a proper Rule 56.1 response to TiEnergy's Rule 56.1(b)(3)(C) Statement of Additional Facts that the Court will consider. Also, in its legal memoranda, Wisconsin Central cites directly to evidence in the record instead of citing Rule 56.1 statements, which defeats the purpose of Rule 56.1. *See LaSalvia v. City of Evanston,* 806 F. Supp. 2d 1043, 1046 (N.D. Ill. 2011) ("The Court also disregards any citations to the record in the parties' legal memoranda that do not reference their

Local Rule 56.1 Statements of Fact."); *see also Malec v. Sanford,* 191 F.R.D. 581, 586 (N.D. Ill. 2000). The Court will disregard these citations.

Next, in support of its Rule 56.1 statements and responses, TiEnergy relies upon TiEnergy President Steven Berglund's affidavit in which he contradicts his June 21, 2016 deposition testimony, thereby violating the "sham affidavit" rule. *See Cook v. O'Neill,* 803 F.3d 296, 298 (7th Cir. 2015) ("A 'sham affidavit' is an affidavit that is inadmissible because it contradicts the affiant's previous testimony ... unless the earlier testimony was ambiguous, confusing, or the result of a memory lapse."); *see also McCann v. Iroquois Mem'l Hosp.*, 622 F.3d 745, 751 (7th Cir. 2010) (sham affidavit rule "applies when the change is incredible and unexplained"). The Court will not consider Berglund's affidavit under this rule and, also, because Berglund's affidavit is not notarized or signed under penalty of perjury. *See Sheikh v. Grant Reg'l Health Ctr.*, 769 F.3d 549, 551 (7th Cir. 2014); Fed.R.Civ.P. 56(c)(4). The Court further notes that affidavits must be based on personal knowledge and that parties cannot rely upon inadmissible hearsay at summary judgment. *See Jackson v. City of Peoria, Ill.,* 825 F.3d 328, 330 (7th Cir. 2016); *Cairel v. Alderden*, 821 F.3d 823, 830 (2016).

In short, by failing to follow Local Rule 56.1, the parties have pointed the Court to a "proverbial haystack" of evidence asking the Court to find the needle. *See Boss v. Castro,* 816 F.3d 910, 914 (7th Cir. 2016). It is not the role of the district court in our adversary system to scour the record looking for material facts at summary judgment. *See Zoretic v. Darge,* 832 F.3d 639, 641 (7th Cir. 2016). With these standards in mind, the Court turns to the relevant facts of

this lawsuit.[2]

## II. Relevant Facts

Wisconsin Central is a railroad common carrier doing business in Illinois, Wisconsin, and Michigan. (R. 53, Pl.'s Rule 56.1 Stmt. Facts ¶ 1.) Wisconsin Central's parent company, Canadian National Railway ("CN"), delivers notices and bills to customers of Wisconsin Central. (*Id.* ¶ 1; R. 58, Def.'s Rule 56.1 Stmt. Facts ¶ 4.) Defendant TiEnergy, an Illinois limited liability company, is in the business of processing and disposing of used railroad ties and maintains a facility in Ashland, Wisconsin. (Pl.'s Stmt. Facts ¶¶ 2, 3; Def.'s Stmt. Facts ¶¶ 7, 8.) Third-Party Defendant Allied, formerly known as Swift Railroad Contractors Corporation ("Swift"), is a full service rail contractor offering maintenance of way services with a facility located in Grimsby, Ontario. (Pl.'s Stmt. Facts ¶ 5; Def.'s Stmt. Facts ¶ 9.) Allied bought and re-branded Swift in 2014, and thus the Court will refer to these corporations collectively as "Allied." (Def.'s Stmt. Facts ¶ 11.)

As relevant to this matter, Allied contracted with its customer Huron Central Railroad ("Huron") to dispose of used railroad ties and, in an effort to carry out this project, Allied contacted TiEnergy, which is in the business of disposing of used railroad ties in an environmentally safe manner. (R. 51-2, Allied Rule 56.1 Stmt. Facts ¶¶ 7, 9; Def.'s Stmt. Facts ¶ 14.) Allied and TiEnergy had an oral understanding that Allied would facilitate the shipment of Huron's used railroad ties to TiEnergy's facility in Ashland, Wisconsin, at which point TiEnergy would take possession of the ties and safely dispose of them. (Allied Stmt. Facts ¶¶ 8,

---

[2] The Court also notes that the parties' arguments made for the first time in their reply briefs are waived. *See Wedemeyer v. CSX Transp., Inc.*, 850 F.3d 889, 897 (7th Cir. 2017).

9; Def.'s Stmt. Facts ¶ 18.) In particular, once TiEnergy took possession of Huron's railroad ties at its Ashland facility, it would grind them and then sell them to its customer XCel Energy, that subsequently incinerated the ground railroad ties. (Pl.'s Stmt. Facts ¶ 9; Allied Stmt. Facts ¶¶ 13, 16; Def.'s Stmt. Facts ¶18.)

In 2013, Allied entered into an agreement with CN – Wisconsin Central's parent company – to have CN ship the Huron ties by rail from Sault Ste. Marie, Ontario to Ashland, Wisconsin. (Def.'s Stmt. Facts ¶ 19; Ex. I, Trans. Agmt. CN 526617-AA.) The agreement between Allied and CN states that the contract incorporates the CN Tariff 9000 series. (Trans. Agmt. CN 526617-AA, Bates WC000010.) As such, CN Tariff 9000 provided the procedure and pricing for freight and optional service charges. (Pl.'s Stmt. Facts ¶ 14.) Under CN Tariff 9000, demurrage would begin to accrue two days after the railcars were placed at the Ashland facility.[3] (*Id.* ¶¶ 15, 16, 20.)

At the time relevant to the movement of the approximately 100 railroad cars containing Huron's used railroad ties, Allied named TiEnergy as the consignee on the bills of lading. (Pl.'s Stmt. Facts ¶ 11.) TiEnergy maintains that it did not know that Allied had listed it as a consignee. (Def.'s Stmt. ¶ 31; R. 62, TiEnergy's Rule 56.1 Add'l Stmt. Facts ¶ 20.) Allied's commercial manager, Richard Middaugh, testified that he did not recall whether he told TiEnergy that it was being listed as a consignee when setting up the shipping instructions with CN. (R. 69, Allied's Rule 56.1 Resp. ¶ 20.) Middaugh, however, maintains that after TiEnergy

---

[3] TiEnergy's argument that it did not receive actual notice of the demurrage tariff in violation of 49 C.F.R. § 1333.3 fails because the events at issue in this lawsuit predate the Surface Transportation Board's promulagation of the regulation set forth in 49 C.F.R. § 1333.3. *See CP Rail v. Leeco Steel, LLC,* No. 14 C 6892, 2015 WL 6859287, at *2 n.2 (N.D. Ill. Nov. 9, 2015).

7

raised this issue with CN in December 2013, he advised TiEnergy that it had been properly identified as the consignee. (*Id.*)

Starting in November 2013, CN began invoicing TiEnergy for demurrage charges based on the delay in CN's railroad cars moving in and out of TiEnergy's Ashland facility. (Def.'s Stmt. Facts ¶ 33; R. 64, Def.'s Rule 56.1 Add'l Facts ¶ 29; Allied Stmt. Facts ¶ 21.) Once TiEnergy received the first demurrage invoice, it immediately objected and contacted CN and Allied stating that it was not responsible for the demurrage charges and that Allied should not have listed TiEnergy as the consignee on the bills of lading. (Def.'s Stmt. Facts ¶ 35.) CN continued to send demurrage invoices to TiEnergy, after which TiEnergy took the position it was not responsible for the charges and refused to pay. (*Id.* ¶ 45.) This lawsuit followed.

## LEGAL STANDARD

Summary judgment is appropriate "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed.R.Civ.P. 56(a). A genuine dispute as to any material fact exists if "the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248, 106 S. Ct. 2505, 2510, 91 L. Ed. 2d 202 (1986). In determining summary judgment motions, "facts must be viewed in the light most favorable to the nonmoving party only if there is a 'genuine' dispute as to those facts." *Scott v. Harris*, 550 U.S. 372, 380, 127 S.Ct. 1769, 167 L.Ed.2d 686 (2007). The party seeking summary judgment has the burden of establishing that there is no genuine dispute as to any material fact. *See Celotex Corp. v. Catrett*, 477 U.S. 317, 323, 106 S. Ct. 2548, 91 L.Ed.2d 265 (1986). After "a properly supported motion for summary judgment is made, the adverse party 'must set forth specific facts showing that there is a genuine

8

issue for trial.'" *Anderson*, 477 U.S. at 255 (quotation omitted). "To survive summary judgment, the nonmoving party must show evidence sufficient to establish every element that is essential to its claim and for which it will bear the burden of proof at trial." *Diedrich v. Ocwen Loan Servicing, LLC*, 839 F.3d 583, 591 (7th Cir. 2016) (citations omitted).

## ANALYSIS

Demurrage, which "is the right of a carrier to assess charges for undue detention of its equipment," is "a well established institution in the transportation industry." *Prince Mfg. Co. v. United States,* 437 F. Supp. 1041, 1044 (N.D. Ill. 1977). Specifically, demurrage is "a charge exacted by a carrier from a shipper or consignee on account of a failure on the latter's part to load or unload cars within the specified time prescribed by the applicable tariffs." *Illinois Cent. R. Co. v. South Tec Dev. Warehouse, Inc.,* 337 F.3d 813, 815 n.1 (7th Cir. 2003) (citation omitted). Demurrage charges serve two purposes: (1) "to secure compensation for the use of the car and of the track which it occupies" and (2) "to promote car efficiency by providing a deterrent against undue detention." *I. C. C. v. Oregon Pac. Indus., Inc.*, 420 U.S. 184, 187, 95 S.Ct. 909, 43 L.Ed.2d 121 (1975) (citation omitted).

When a railroad common carrier seeks to impose liability for demurrage charges, the charges "may be imposed only against a consignor, consignee, or owner of property, or others by statute, contract, or prevailing custom." *Evans Prods. Co. v. I.C.C.,* 729 F.2d 1107, 1113 (7th Cir. 1984); *see also South Tec,* 337 F.3d at 820. When determining demurrage charges, courts look to the relevant bill of lading, which is the "basic transportation contract between the shipper-consignor and the carrier; its terms and conditions bind the shipper and all connecting carriers." *South Pacific Transp. Co. v. Commercial Metals Co.*, 456 U.S. 336, 342, 102 S.Ct.

9

1815, 72 L.Ed.2d 114 (1982); *see also Jackson Rapid Delivery Serv., Inc. v. Thomson Consumer Elecs., Inc.,* 210 F. Supp. 2d 949, 952 (N.D. Ill. 2001) ("To determine if there is a contractual promise to pay we look primarily to the bills of lading, bearing in mind that the instrument serves both as a receipt and as a contract."). In other words, a bill of lading "records that a carrier has received goods from the party that wishes to ship them, states the terms of carriage, and serves as evidence of the contract for carriage." *Kawasaki Kisen Kaisha Ltd. v. Regal-Beloit Corp.*, 561 U.S. 89, 94, 130 S.Ct. 2433, 177 L.Ed.2d 424 (2010) (citation omitted).

A "consignee is the party designated to receive a shipment of goods," but the term "consignee" is "more than a mere designation." *Norfolk S. Ry. Co. v. Groves,* 586 F.3d 1273, 1281 (11th Cir. 2009). To clarify, the "term takes on a legal significance due to the quasi-contractual relationship that arises between the consignee and the carrier." *Id.* As the Seventh Circuit teaches, however, "[n]o liability exists merely on account of being named in the bill of lading." *Evans Prod.,* 729 F.2d at 1113. More specifically, under Seventh Circuit case law, a unilateral decision to name a consignee on a bill of lading is not enough to create liability for demurrage charges. *See South Tec,* 337 F.3d at 821. The Seventh Circuit's holding is consistent with the Eleventh Circuit's recognition that a party's status as a consignee is a matter of contract, and "[l]ike any contractual relationship, there must be a meeting of the minds between the parties." *Groves,* 586 F.3d at 1281; *see, e.g., CP Rail v. Leeco Steel, LLC*, No. 14 C 6892, 2015 WL 6859287, at *3 (N.D. Ill. Nov. 9, 2015).[4] Nevertheless, a consignee's liability may also arise

---

[4] In *CP Rail*, Judge Gettlemen determined that the plaintiff had failed to properly allege liability because it did not show a meeting of the minds as to defendant's status as a consignee. *See CP Rail v. Leeco Steel, LLC*, No. 14 C 6892, 2015 WL 6859287, at *3 (N.D. Ill. Nov. 9, 2015). Judge Gettlemen did not discuss whether the plaintiff had sufficiently alleged that the defendant was a consignee by operation of law – as is the case here – although he did reject the

10

"by operation of law when the consignee accepts delivery of the goods[.]" *Groves,* 586 F.3d at 1278. "Thus, only an original party to the rail transportation contract, or a consignee by virtue of acceptance of the goods, may be liable for demurrage." *Id*. at 1278-79 (citing *Pittsburgh & C. Ry. Co. v. Fink,* 250 U.S. 577, 581, 40 S.Ct. 577, 63 L.Ed. 1151 (1919).

As discussed, that Allied listed TiEnergy as a consignee on the relevant bills of lading, alone, is not enough to establish TiEnergy's liability for demurrage charges. *See Evans,* 729 F.2d at 1113. As the Seventh Circuit explains, "being listed by third parties as a consignee on some bills of lading is not alone enough to make [defendant] a legal consignee liable for demurrage charges, although it, *coupled with other factors,* might be enough to render [defendant] a consignee." *South Tec.,* 337 F.3d at 821 (emphasis added). Thus, the Court turns to other relevant factors to determine whether TiEnergy is a consignee by operation of law, including whether the "consignee has played an active role in the railroad transportation contract or has an interest in or control over the goods," *see South Pacific Transp. Co. v. Matson Navigation Co.,* 383 F. Supp. 154, 157 (N.D. Cal. 1974), or whether the consignee accepted delivery of the goods. *See Groves,* 586 F.3d at 1278 ("a consignee's liability is quasi-contractual, and arises by operation of law when the consignee accepts delivery of the goods[.]"); *see also Universal Am-Can, Ltd. v. Nw. Steel & Wire Co.,* No. 01 C 50220, 2002 WL 88924, at *1 (N.D. Ill. Jan. 22, 2002) ("Consignees may be liable for freight charges based on acceptance of delivery even where the initial liability for the charges rests with the consignor.").

---

plaintiff's argument in regard to an implied-in-fact contract under Wisconsin law. *See id.* at *4.

Here, it is undisputed that Allied and TiEnergy had an oral agreement that Allied would facilitate the shipment of Huron's used railroad ties to TiEnergy's facilitity in Ashland, Wisconsin, at which point TiEnergy would take possession of the ties and safely dispose of them. There is also undisputed evidence in the record that TiEnergy accepted the railroad cars containing Huron's ties at its Ashland facility and unloaded the ties. (Allied Stmt. Facts. ¶ 16.) Further, TiEnergy had a beneficial interest in the ties because once TiEnergy took possession of them at its Ashland facility, it ground them up and then sold them to its customer XCel Energy to be incinerated. Viewing the evidence and all reasonable inferences in TiEnergy's favor, by accepting the Huron ties at the Ashland facility, TiEnergy is a consignee by operation of law. *See Groves,* 586 F.3d at 1278 ("By accepting delivery of a shipment, the consignee's conduct assumes a quasi-contractual significance by virtue of the transportation contract, which identifies the parties and assigns responsibility for particular charges."); *C.F. Arrowhead Servs., Inc. v. AMCEC Corp.,* 614 F. Supp. 1384, 1387 (N.D. Ill. 1985) (party "liable for charges by operation of law because it accepted delivery of goods"). Moreover, TiEnergy had a beneficial interest in the goods because after processing the railroad ties, it sold them to XCel, further underscoring the conclusion that TiEnergy was a consignee. *See Matson Navigation,* 383 F. Supp. at 157. The Court therefore grants Wisconsin Central's motion for summary judgment and denies TiEnergy's cross-motion for summary judgment.

Thus, the Court turns to Allied's motion for summary judgment to determine TiEnergy's and Allied's responsibilities as consignee (TiEnergy) and shipper/consignor (Allied) under the circumstances. As the *Groves* decision instructs, "[u]nless the bill of lading provides to the contrary, the consignor remains primarily liable for the freight charges and pursuant to the

carrier's tariff, the consignee becomes liable for demurrage charges at the freight's destination." *Groves,* 586 F.3d at 1278; *see also Steel Transp., Inc. v. Joseph T. Ryerson & Sons, Inc.,* No. 86 C 7328, 1987 WL 12927, at *2 (N.D. Ill. June 24, 1987) ("The general rule is that a consignee [] becomes liable for freight charges when it accepts the freight."). There "are exceptions to a consignee's demurrage liability," including that "an agent-consignee can avoid demurrage liability by notifying the carrier of its agency status and providing the carrier with the name and address of the shipment's beneficial owner prior to accepting delivery." *Groves,* 586 F.3d at 1278-79; *see also South Tec,* 337 F.3d at 816-17; 49 U.S.C. § 10743(a)(1).

It is undisputed that the demurrage charges at issue resulted from the railroad cars' delayed movement in and out of TiEnergy's facility. (Allied Stmt. Facts. ¶ 21.) More specifically, in November 2013, Allied informed TiEnergy that it would work with CN to release the first shipment of railcars from Sault Ste. Marie, Ontario for delivery to TiEnergy's siding facility in Ashland. (*Id.* ¶¶ 15, 16; R. 66-1, Berglund Dep., at 62-63.) In response, when communicating with Allied, TiEnergy's President Steven Berglund agreed to be responsible for releasing the cars from TiEnergy's siding facility back to CN after unloading them. (Allied Stmt. Facts ¶ 16; Berglund Dep., at 64-65). Once the first load of cars arrived at TiEnergy's siding facility and were unloaded, Berglund was unable to release the cars back to CN, after which he asked for Allied's assistance. (Allied Stmt. Facts ¶ 17.) Immediately thereafter, Allied obtained direction from CN on how Allied could also release the railcars from TiEnergy's facility so that there could be multi-customer access to release the railcars back to CN. (*Id*. ¶ 18.) This process required TiEnergy to send CN a letter on its letterhead authorizing Allied to release the cars on TiEnergy's siding. (*Id*.; Berglund Dep., at 70.) It is undisputed that TiEnergy

13

never provided the necessary authorization to CN that would allow Allied to release the cars or have any control over the movement of the railcars in TiEnergy's facility. (Allied Stmt. Facts ¶ 19; Berglund Dep., at 71.) Without TiEnergy's necessary authorization, only TiEnergy could release the railcars back to CN. (Allied Stmt. Facts ¶¶ 18, 19; Berglund Dep., at 70-71.) Also, despite CN's notices to TiEnergy, TiEnergy did not affirmatively "order in" cars to be placed in its siding, resulting in delays of the incoming railway cars. (Allied Stmt. Facts ¶¶ 24, 27; Berglund Dep., at 89.)

Construing the evidence and all reasonable inferences in TiEnergy's favor, because Allied did not have the authority to release the railcars back to CN once they were at TiEnergy's Ashland facility and TiEnergy did not affirmatively "order in" cars as required, TiEnergy is liable and responsible for the demurrage charges at issue. *See Groves,* 586 F.3d at 1278. TiEnergy's argument that it falls within the "agent" exception to its demurrage liability is without merit because there is no evidence in the record that TiEnergy notified CN of its agency status and provided CN with the name and address of the shipment's beneficial owner prior to accepting delivery. *See Groves,* 586 F.3d at 1279; *South Tec,* 337 F.3d at 816-17; *see also* 49 U.S.C. § 10743(a)(1). Similarly, TiEnergy's perfunctory suggestion that the weather conditions in December 2013 excuses it from liability – presumably that the snowfall triggered a "force majeure" event under the CN Tariffs – fails because TiEnergy did not develop this argument or support it with any legal authority. *See United States v. Cisneros,* 846 F.3d 972, 978 (7th Cir. 2017) ("perfunctory and undeveloped arguments, and arguments that are unsupported by pertinent authority, are waived.").

Accordingly, Allied did not breach the simple, oral agreement with TiEnergy and TiEnergy's attempts to add promises and obligations to that agreement are not supported by the record. *See Life Plans, Inc. v. Security Life of Denver Ins. Co.,* 800 F.3d 343, 349 (7th Cir. 2015) ("To survive summary judgment, the non-moving party must show evidence sufficient to establish every element that is essential to its claim and for which it will bear the burden of proof at trial."). As to TiEnergy's other claims in its First Amended Third-Party Complaint, it is undisputed that Allied and TiEnergy did not have an agreement that Allied would indemnify TiEnergy for any demurrage charges incurred. (Allied Stmt. Facts ¶ 31.) TiEnergy's implied indemnification argument fares no better because TiEnergy was not "blameless" under the circumstances. *See Schulson v. D'Ancona & Pflaum LLC,* 354 Ill. App. 3d 572, 576 (1st Dist. 2004) ("Under implied indemnity, a promise to indemnify will be implied by law where a blameless party is derivatively liable to the plaintiff based on the party's relationship with the one who actually caused the plaintiff's injury."). Last, TiEnergy's argument based on the Illinois' Joint Tortfeasor Contribution Act, 740 ILCS 100/2, is similarly unavailing because Allied is not "subject to liability in tort." *See Board of Trs. of Cmty. Coll. Dist. No. 508 v. Coopers & Lybrand,* 208 Ill. 2d 259, 278 (Ill. 2003). The Court therefore grants Allied's summary judgment motion as to TiEnergy's First Amended Third-Party Complaint.

On a final note, TiEnergy's argument that Wisconsin Central has no right to collect the demurrage charges because CN – not Wisconsin Central – was the party to the contract with Allied is unavailing. To clarify, the transportation contract at issue specifically includes a disclosure that CN is contracting on behalf of its United States operating companies, which includes Wisconsin Central, CN's wholly-owned operating railroad subsidiary. (R. 66-9

TiEnergy's Ex. I, Trans. Agmt. CN 526617-AA.)

## CONCLUSION

For the reasons set forth above, the Court grants Wisconsin Central's and Allied's summary judgment motions and denies TiEnergy's motion for summary judgment.

**Date:**  April 21, 2017

                                            **ENTERED**

                                            **AMY J. ST. EVE**
                                            **United States District Court Judge**